# McGuire v. Philadelphia (No. 1).

*Municipalities—Increase of indebtedness—Computation of city's debt—Deductions—Debt assumed by coincident school district—Authorized but unissued loans—Constitutional law—Act of April 20, 1874, P. L. 65—Act of May 18, 1911, P. L. 309.*

1. The constitutional provision which concisely, clearly and definitely fixes the borrowing capacity of a city is that its indebtedness "shall never exceed seven per centum upon the assessed value of the taxable property therein." The indebtedness of a municipality, like that of an individual, is what it owes and can be called upon to pay, and the constitutional limitation upon its power to contract indebtedness is fixed without regard to what assets, real or personal, it may own.

2. In construing the meaning of "solvent debts" mentioned in the Act of April 20, 1874, P. L. 65, only debts due to a municipality directly, payment of which it can enforce as one of its quick assets for the liquidation of any of its obligations, will be deemed to be included.

3. Although a portion of the debt of a city may have been imposed upon a school district coincident with such city, and assumed by it, this in no manner affects the absolute liability of the city to pay such indebtedness. The amount of the indebtedness of the city is just the same before as after the assumption of a portion thereof by the school district, and the amount so assumed cannot be deducted from the gross indebtedness of the city in determining how much it actually owes. The words "solvent debts" cannot be construed to include the character of obligation, if any, created by such assumption of indebtedness by a school district, especially where it does not appear how or when the indebtedness incurred by the city for school purposes is to be paid by the school district.

4. In determining the net amount of its indebtedness, a municipality is not entitled to deduct authorized but unissued loans. Redding v. Esplen Borough, 207 Pa. 248, explained.

5. The select and common councils of the City of Philadelphia, having by ordinance expressed their desire to increase the city's indebtedness in the sum of $8,600,000, and an election having been duly held at which the electors of the city voted in favor of the proposed increase, and an ordinance having subsequently been introduced, authorizing the mayor to borrow the said money, a taxpayer's bill in equity was filed in the Supreme Court, which as-

sumed original jurisdiction thereof, praying that an injunction should issue, restraining the issuance of the bonds. It was conceded that the borrowng capacity of the city would be exceeded by the proposed loan, and that the same would be invalid unless the city was entitled to deduct from its gross indebtedness certain debts which had been incurred by the city for school purposes and had been assumed by the school district coincident with the said city, under the Act of May 18, 1911, P. L. 309, or certain loans authorized but unissued. By the terms of the Act of 1911 title to all property previously held by the City of Philadelphia for public school purposes had passed to a school district which was made coincident with the said city, and the school district was required to assume payment of all indebtedness, which had been incurred by the city for school purposes. Under the terms of this act the said school district did assume such indebtedness of the city, amounting to $6,524,416.57. The obligations of the city for this amount were still outstanding. There was nothing in the act providing how or when the school district should pay such indebtedness. There was a promise by the school district to pay the debt, but no promise to pay anything to the city. It also appeared that there were $6,750,000 of loans which had been authorized but had never been issued. *Held,* (1) the indebtedness of the city assumed by the school district could not be deducted in ascertaining the net indebtedness of the city; (2) loans authorized but unissued were a part of the city's debt, and must be counted as such.

Mr. Justice Elkin and Mr. Justice Stewart dissent.

Argued March 23, 1914. Appeal, No. 690, Miscellaneous Docket No. 2, 1914. Original Bill in Equity by Frederick T. McGuire, a citizen and a taxpayer of the City of Philadelphia, in his own behalf and in behalf of such citizens and taxpayers of said city as may join herein, v. The City of Philadelphia, a Municipal Corporation of the Commonwealth of Pennsylvania of the first class, and Rudolph Blankenburg, Mayor, John M. Walton, Controller, and William McCoach, Treasurer of the said city. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Injunction granted.

Taxpayers' bill in equity to restrain the issuance of a loan.

On March 30, 1914, the following decree was entered and subsequently the opinion of the court was filed, in which the facts appear; March 23, 1914, this cause came on to be heard on bill and answer and was argued by counsel, and now March 30, 1914, on due consideration thereof, it is ordered, adjudged and decreed as follows:

1. That the election held November 4, 1914, by the qualified electors of the City of Philadelphia to obtain the assent of said electors to an increase of eight millions six hundred thousand dollars in the indebtedness of said city is hereby declared void.

2. That the ordinance introduced in the Common Councils of said city on February 5, 1914, authorizing the creation of a loan in the sum of eight millions six hundred thousand dollars, for the development of city transit, etc., is hereby declared invalid.

3. That a writ of injunction be issued perpetually restraining the City of Philadelphia, Rudolph Blankenburg, mayor of the said city, John M. Walton, controller of the said city, and William McCoach, treasurer of the said city, the said defendants, and each of them, from carrying out the direction of the said proposed ordinance and from borrowing on the faith and credit of the City of Philadelphia, the said sum of eight millions six hundred thousand dollars, or any part thereof, and from issuing the bonds of the said city for the said sum or any part thereof, and from signing, countersigning or paying any warrant for the cost of advertising the said ordinance. It is further ordered that the City of Philadelphia pay the costs of this proceeding.

*Theodore F. Jenkins,* for plaintiff.—Bonds for loans which have been authorized, it is submitted, must be considered as potentially issued, for they are issued from time to time as the mayor deems it advisable, he having the right to do so: Brooke v. Philadelphia, 162 Pa. 123; Barr v. Philadelphia, 191 Pa. 438.

The contention of the defendants that the amount of the "school debt" having been assumed by the Board of Public Education, should be deducted from the indebtedness of the city it is submitted cannot be sustained: Brooke v. Philadelphia, 162 Pa. 123.

*Michael J. Ryan,* City Solicitor, with him *Ernest Lowengrund,* Assistant City Solicitor, for defendant.—The effect of the legislative transfer to the school district of Philadelphia and the assumption by the Board of Public Education of that district of the debt incurred by the city for school purposes is to decrease the city's net indebtedness in the amount so transferred and assumed, or so much thereof as may remain outstanding from time to time: Elliot v. Philadelphia, 229 Pa. 215; Wilkes-Barre's App., 109 Pa. 554; Spangler v. Leitheiser, 182 Pa. 277; Brooke v. Philadelphia, 162 Pa. 123; Bruce v. Pittsburgh, 166 Pa. 152; Shuldice v. Pittsburgh, 234 Pa. 90; Ex Parte Newport, 37 Lawyers' Reports Annotated, (New Series) 1034; State v. Tomahawk Common Council, 96 Wis. 73; Todd v. Laurens, 48 S. C. 395; Campbell v. Indianapolis, 155 Ind. 186; Board of Education of Huron v. Nat. Life Insurance Co., 94 Fed. Repr. 324; Wilson v. Board of Trustees, 133 Ill. 443; Kennebec Water Dist. v. Waterville, 96 Maine 234; Tuttle v. Polk, 92 Iowa 433; Dodson v. Taylor, 53 N. J. Law 200; Newell v. People, 7 New York 9.

Authorized, but unissued loans, are not a part of the city's debt, so as to diminish its power to borrow money: Redding v. Esplen Boro., 207 Pa. 248; Thompson Houston Electric Co. v. Newton, 42 Fed. Repr. 723.

OPINION BY MR. JUSTICE BROWN, May 12, 1914:

By an ordinance of the select and common councils of the City of Philadelphia, approved October 3, 1913, the corporate authorities of the said city signified their desire to increase its indebtedness in the sum of $8,600,000, and at an election held on the fourth of the following

November the electors of the city voted in favor of the proposed increase. On February 5, 1914, an ordinance was introduced in the common council of the city, authorizing the mayor to borrow $8,600,000 voted for at the November election. On March 12, 1914, the complainant, a taxpayer of the City of Philadelphia, filed this bill, of which we assumed original jurisdiction, in view of the large public interest involved and of the importance of an early determination of the question whether the borrowing capacity of the city had been exceeded in authorizing the creation of a new indebtedness of $8,600,000. The averment of the bill is that the said borrowing capacity was exceeded, and its prayers are: "First. That the said election held upon November 4, 1913, be declared void. Second. That the City of Philadelphia, Rudolph Blankenburg, mayor of the said city, John M. Walton, controller of the said city, and William McCoach, treasurer of the said city, the said defendants, and each of them be restrained by injunction preliminary until hearing and perpetual thereafter from carrying out the direction of the said proposed ordinance annexed hereto marked 'Exhibit A,' and from borrowing on the faith and credit of the City of Philadelphia, the said sum of $8,600,000, or any part thereof, and from issuing the bonds of the said city for the said sum or any part thereof, and from signing, countersigning or paying any warrant for the cost of advertising the said ordinance. Third. That the said proposed ordinances be declared invalid."

The last assessed valuation of taxable property in the city preceding the election of November 4, 1913, was $1,556,323,614, seven per centum of which is the sum of $108,942,652.98. This was the limit of the borrowing capacity of the city when the ordinance of October 3, 1913, was approved and the election on November 4 was held. From the gross indebtedness of the city existing at those dates the defendants insist there ought to have been two deductions—one for $6,524,216.57, the amount

of the city's indebtedness incurred by it for school purposes and subsequently assumed by the school district under the provisions of the Act of May 18, 1911, P. L. 309, and the other for $6,750,000, the amount of authorized but unissued loans. If neither of these two items could have been lawfully deducted from the gross indebtedness of the city, it is conceded that its borrowing capacity was exceeded in authorizing the loan of $8,-600,000. If that capacity was exceeded, the said proposed loan must be declared invalid.

The constitutional provision which concisely, clearly and definitely fixes the borrowing capacity of a city is that its indebtedness "shall never exceed seven per centum upon the assessed value of the taxable property therein." The indebtedness of a municipality, like that of an individual, is what it owes and can be called upon to pay, and the constitutional limitation upon its power to contract indebtedness is fixed without regard to what assets, real or personal, it may own. It may own absolutely real estate worth seven per cent. of all the taxable property within its limits, but property which it may so own is not to be weighed in the balance in determining how much it may borrow. Under the plain words of the Constitution it is never a question of how much a municipality owns in determining how much it may borrow. County, city, borough, township and school district, corporately rich or poor, all have the same basis for their borrowing capacity. It is the assessed value of the taxable property within their confines, seven per centum of which is the limit to which any of them may borrow. The Constitution says nothing about their assets. If the same were permitted to be taken into account in ascertaining the borrowing capacity of the subdivisions of the State, it would not only not be uniform, but there would be endless controversies and litigation in determining the value of county, city, borough, township and school district assets. The constitutional provision in this respect is alike for rich and poor. In the same year that

it went into effect the legislature undertook to increase the borrowing capacity of municipalities by providing that, from their gross indebtedness, for the purpose of ascertaining their borrowing capacity, there shall be deducted "all outstanding solvent debts." By necessary implication this legislation was forbidden, for the sole constitutional provision, which says nothing of the assets of a municipality, is that its indebtedness shall never exceed seven per centum upon the assessed value of the taxable property therein.

If the question of the constitutionality of the Act of April 20, 1874, P. L. 65, had been raised promptly after its passage, we have no doubt that it would have been held to be legislation forbidden by the Constitution by clearest implication. But for more than a score of years it remained unchallenged, and, in the interval, municipalities acted upon its authority, and millions of dollars have been borrowed and disbursed in reliance upon it. It is for this reason that we do not now feel any imperative necessity which would justify us in striking it down: Commonwealth v. Gilligan, 195 Pa. 504; Elliot v. Philadelphia, 229 Pa. 215. In the latter case the solvent debts which the city claimed to deduct from its gross indebtedness were, as appears from the paper books now before the writer, for delinquent taxes and other items which were absolutely due and payable to the city, the proceeds of which it could use to discharge any outstanding obligations. Outstanding solvent debts, within the meaning of the Act of 1874, which a municipality may deduct from its gross indebtedness in ascertaining its borrowing capacity, are debts due to it directly, payment of which it can enforce as one of its quick assets for the liquidation of any of its obligations. Elliot v. City of Philadelphia is authority for this, and nothing more, in construing the meaning of the words "solvent debts" as used in the Act of 1874, and neither now nor at any time in the future will they be given any other than their strict, literal meaning.

At the beginning of the first school year after the passage of the Act of May 18, 1911, P. L. 309, commonly known as the "School Code," the title to all property, real and personal, which had belonged to the City of Philadelphia for public school purposes, passed to the school district of the said city. By section 120 of the said code the school district succeeded to and was required to assume the payment of all indebtedness which had been incurred by the city for school purposes. When the title of the city to the property owned by it for school purposes thus passed to the school district, the net outstanding debt of the city which had been incurred for school purposes was $6,978,080.89. At the time of the election of November 4, 1913, this had been reduced to $6,524,216.57, and one of the two questions for our determination is whether that sum ought to have been included in the indebtedness of the city in ascertaining its borrowing capacity when the loan of $8,600,000 was authorized.

The indebtedness of the city to the amount of $6,524,-216.57, incurred by it for school purposes, is still outstanding in the shape of its valid obligations to pay, and the holder of each of these obligations can look to it for payment. The Act of 1911, imposing upon the school district the obligation to pay this indebtedness, in no manner affects the absolute liability of the city to pay it. The legislature could not have impaired in the least degree these obligations of the city, for both Federal and State Constitutions forbid the passage of any statute impairing the obligation of contracts. The liability of the city to pay remains, in respect to this indebtedness, just the same as if the Act of 1911 had not been passed. What its general indebtedness was before the passage of that act still exists, except so far as it had been paid or reduced.

But it is earnestly contended that, under the Act of April 20, 1874, the amount of the city's indebtedness assumed by and imposed upon the school district ought

to be deducted from the gross indebtedness of the city in determining how much it actually owes. We have already stated what is to be understood as "solvent debts" within the meaning of the Act of 1874, the constitutionality of which we have been constrained to sustain on doubtful ground; and it is easy of demonstration that the deductions claimed by the city for its indebtedness for school purposes are not within the provisions of that act, which are not to be further extended for the purpose of practically increasing the borrowing capacity of a municipality beyond the limit fixed by the Constitution. There is nothing in the Act of 1911 providing how or when the indebtedness incurred by the City of Philadelphia for school purposes shall be paid by the school district. Answer may be made to this that the school district can be compelled to pay whenever the city pays its obligations to those who will look to it for payment. When that will be does not appear from the pleadings. It may be in the remote future, but whether the time of payment is near or far away, the same power that passed the school code may repeal it, and in that event, with all property held for school purposes returned to it, the city might find itself, in the matter of its indebtedness for school purposes, just where it was before the code was passed. By its resolution of October 8, 1912, the Board of Public Education formally recognized the indebtedness of the city for school purposes as a debt of the school district, imposed upon it by the Act of 1911, but the proviso is that the school district shall not pay until sometime in the future. Under the authority conferred upon it by section 506 of the code, the school district might have issued bonds for the purpose of paying the indebtedness of the city for school purposes and handed those bonds over to it; but it did not do so. Suppose, however, it had so acted; the city, with those bonds in its actual possession, could certainly now contend with more reason

that the school indebtedness should no longer be charged
against its general indebtedness; but we should have
to say, even under such circumstances, that the amount
of its gross indebtedness remained unaffected, though
means for the payment of a portion of the same had
been placed in its hands by the school board. This is
what was distinctly ruled by a full court in the well-
considered case of Brooke v. City of Philadelphia, 162
Pa. 123. It is conclusive that the city's present conten-
tion cannot prevail. It was there held that only the
city's own obligations in the sinking fund could operate
as a reduction of its indebtedness, and the reason for
this was that so much of its indebtedness as was repre-
sented by its own bonds in the sinking fund, purchased
by it, had been practically paid. As to all the other se-
curities in that fund it was ruled that the city's indebted-
ness was not reduced by them, even though the fund was
inviolably pledged, both under the Constitution and an
act of assembly, to the payment of the municipal in-
debtedness. In so holding Mr. Justice DEAN said: "As
set out in appendix to plaintiffs' paper book, there are
now in the sinking fund, 6 per cents city loan, $14,-
233,350; 4 per cents, $1,949,750; 3 per cents, $6,947,000;
altogether, $23,130,100 of city certificates purchased by
the commissioners. There are, besides these, other se-
curities, not those of the city, in the fund. As to these
last, obviously, they remain in the fund, bound by the
inviolable pledge which attached to them when they first
became part of it. So far as concerns them, they have
not yet been applied in payment or redemption of any
part of the funded debt. An asset of the city, easily
convertible into cash, they undoubtedly are, but as yet
they have not operated to the reduction of the funded
debt, to which purpose they were pledged. In effect,
they only represent the savings of the city, set aside in
anticipation of payment of the debt; as to any actual
reduction of the debt by them, there has been none; the
debt is still an outstanding liability unaffected by the

savings, with only an increased ability on part of the city to pay; an increase in ability measured by the cash value of the savings. When used in purchase of the debt, there is a release of the pledge, and a discharge of the obligation, to the amount of the purchase." This followed the plain words of the Constitution, that, without regard to its own assets for the payment of its debts, the indebtedness of a municipality shall never be increased beyond the limit of seven per centum upon the assessed value of taxable property therein. Brooke v. Philadelphia was subsequently followed by Bruce v. Pittsburgh, 166 Pa. 152, and Schuldice v. Pittsburgh, 234 Pa. 90.

The city does not even hold a debt against the school district, due and payable to it, the proceeds of which it may use for the payment of any of its outstanding obligations. There is a mere promise or obligation by the school district, admittedly solvent, to pay a part of the city's indebtedness. There is, however, no promise to pay anything to the city, and no obligation is imposed upon the school district to do so. To contend that a mere promise, or even an obligation, to pay a debt which the city itself owes, is a solvent debt due to it, is to assume that the legislature did not know the difference between a debt due from one person to another and a promise by a third party to pay the same. Solvent debts which the legislature had in mind are debts absolutely due and payable directly to the municipality, without regard to what it may do with the money when received. The indebtedness of the city, incurred by it for school purposes, is still its debt, to be included in determining the amount of its liabilities.

The second question for our consideration is the right of the city to deduct from its gross indebtedness authorized but unissued loans amounting to $6,750,000. If the city's contention as to this should prevail, it would mean that a municipality's indebtedness may be authorized by the corporate authorities and electors to an unlimited amount and that the Constitution permits the authoriza-

tion of that which it at the same time declares shall not be consummated. This is trifling with the spirit and intent of that instrument, conflicts with common sense in construing it and is in the teeth of the third section of the Act of 1874, which provides that "the indebtedness of any county, city, borough, township, school district, or other municipality or incorporated district, in this Commonwealth, may be authorized to be increased to an amount exceeding two per centum, and not exceeding seven per centum, upon the last preceding assessed valuation of the taxable property therein." The authorization of indebtedness by a municipality is thus clearly limited by the statute to seven per centum of the assessed valuation of taxable property. In the second section of the same act the municipal authorities are permitted "to authorize" an increase of debt to the constitutional limit. Every authorization of a municipal loan is, therefore, to be regarded as exhausting pro tanto the municipality's borrowing capacity. It is not conceivable that the framers of the Constitution, or the people who adopted it, ever intended that an election should be held to authorize that which it may be impossible to carry out; yet this is the anomalous situation contended for by the defendants. If an increase of one million dollars beyond the seven per cent. limit may be authorized because former authorized loans had not been issued when said increase was authorized, loans to the amount of a hundred million dollars beyond the limit may be authorized. In such a situation who could declare which loans should be issued?

Counsel for defendants seek to justify their contention as to authorized but unissued loans by what was said by the lower court in Redding v. Esplen Borough, 207 Pa. 248. The bill in that case was to enjoin payment by the borough authorities of moneys claimed on a contract for the construction of a sewer alleged to have been illegally entered into by the borough authorities, in view of its indebtedness existing at the time, including au-

thorized but unissued loans. The borough indebtedness, at the time it contracted for the construction of the sewer, including those loans, was $209 less than two per cent. of the assessed valuation of the taxable property within its limits. There was subsequently assessed against it as its portion of the cost of the construction of the sewer the sum of $1,066.89, which it paid; but there was no evidence that this sum had not been actually paid out of the borough's current funds. While it is true that the court below expressed the opinion that authorized but unissued loans of the borough were not to be regarded as its indebtedness, we are not to be understood as approving this. We affirmed the decree because, with the unissued loans counted as part of the municipal indebtedness at the time the contract was entered into, that indebtedness was not in excess of the constitutional limit, and it further did not appear, as the court found, that the contract imposed any liability upon the borough. Another case relied upon by counsel for defendants is Thompson-Houston Electric Company v. City of Newton, 42 Fed. Repr. 723, in which there is an expression by the Circuit Court of the United States for the southern district of Iowa that municipal indebtedness is not incurred for municipal improvements until the bonds authorized for the same have been sold and issued. It appeared, however, that, at the time the City of Newton was about to issue the bonds involved in the controversy before the court, the indebtedness of the city was not beyond the constitutional limit, and, therefore, the restraining order was refused. That case is not to be regarded as an authority in support of the defendants' contention in the present proceeding.

Nothing more need be said in support of our decree of March 30, 1914.

DISSENTING OPINION BY MR. JUSTICE ELKIN:

I must be in error, as the court has so decided, but not being convinced of the error, and since the debt creating

power of bodies corporate under the Constitution throughout the entire State may be indirectly involved, I deem it proper to state a few reasons to sustain the faith that is in me. The subject matter involved is the borrowing capacity of the City of Philadelphia under the Constitution, and the decision depends upon the proper ascertainment of the net indebtedness under the Act of 1874. Whether the city is attempting to borrow too much money to provide for permanent improvements, or not enough for the proper development of a progressive municipality, are questions for the people to determine and not for the courts to decide. When courts are asked to determine what the borrowing capacity of a city is, they must look to the Constitution and statutes as their guide in arriving at a just decision. Hence, our first inquiry must necessarily be, what limitation has been placed upon the power of cities or other bodies corporate to create indebtedness by our Constitution? The answer will be found in Article IX, Section 8, which provides, inter alia, as follows: "The debt, of any county, city, borough, township, school district, or other municipality or incorporated district, except as herein provided, shall never exceed seven per centum upon the assessed value of the taxable property therein." It will be noticed that the limitation on the power to create indebtedness is made to apply in the express language of the Constitution to each separate political sub-division, or body corporate; and not to all of the sub-divisions, or bodies corporate, collectively. This means that a county can create for county purposes an indebtedness not to exceed seven per centum of the assessed value of its taxable property; that a city can create an indebtedness for municipal purposes not to exceed seven per centum of the assessed value of the taxable property within the city; and that a school district can likewise create an indebtedness for school purposes not to exceed the constitutional limitation. It is now forty years since

the adoption of the Constitution, and so far as I am advised, no one has ever seriously questioned the power of each separate district enumerated in the organic law to create an indebtedness not to exceed the seven per centum limitation, unless the legislature still further limited a particular class of districts to a less borrowing capacity than the Constitution permits, which the law making body has the power to do. This is true of the School Code which limits the debt creating power of a school district of the first class to two per centum of the assessed value of the taxable property therein. The limitations of the Constitution apply to the city, and to the school district of Philadelphia, just as they do to all other cities and school dstricts of the Commonwealth. The Constitution is in force throughout the entire State, and applies to all districts of the same class precisely in the same manner, no matter where located. Each separate body corporate, enumerated in the Constitution, has the power to create an indebtedness not to exceed seven per centum of the assessed value of the taxable property therein. As an illustration, the City of Pittsburgh has a borrowing capacity for municipal purposes of seven per centum of the assessed value of the taxable property in the city, and the County of Allegheny has likewise a separate borrowing capacity for county purposes of seven per centum upon the assessed value of the taxable property in the county. It is also true, that in determining the borrowing capacity of the City of Pittsburgh for municipal purposes, the indebtedness of Allegheny County is not taken into consideration; and in determining the net indebtedness of the county, the municipal indebtedness of the city is not included. The county and the city are separate bodies corporate, each of which has the power to create an indebtedness within the constitutional limitation without reference to the other. This is no new doctrine, but one which has had the sanction of the legal profession in our own State since the adoption of the Constitution, and the approval

of almost every jurisdiction in which the question has been raised. Mr. Dillon in his valuable work on Municipal Corporations states the rule as follows: "The limitations of the Constitution as generally expressed on indebtedness are to be taken and understood distributively and not collectively. The prohibition unless otherwise expressed or provided, is aimed at each of the organizations, or political sub-divisions, or bodies corporate, separately; the indebtedness of a county plays no part in determining the existing indebtedness of a city, town or village which forms a part thereof, and vice versa." Of the numerous authorities which sustain this doctrine the following may be cited: Ex Parte Newport, 37 L. R. A. .(N. S.) 1034; State v. Common Council of Tomahawk, 96 Wis. 73; Todd v. Laurens, 48 S. C. 395; Campbell v. Indianapolis, 155 Ind. 186; Wilson v. Board, 133 Ill. 443; Huron Board of Education v. Life Ins. Co., 94 Fed. Repr. 324; Kennebec Water Dist. v. Waterville, 96 Me. 234; Tuttle v. Polk, 92 Iowa 433. As applied to the present case this means that the City of Philadelphia at the present time has a borrowing capacity of seven per centum of the assessed value of the taxable property therein for municipal purposes; and that the school district of Philadelphia has a borrowing capacity of two per centum of the assessed value of the taxable property within the district for school purposes, and this is so because the School Code thus limited its borrowing capacity. It is not open to doubt that the City of Philadelphia can act independently of the school district in creating indebtedness for municipal purposes, and that the school district can act independently of the city in creating an indebtedness for school purposes. With this understanding of the law let us see how the present case stands. The School Code created a school district of the first class within the territorial limits of the County of Philadelphia. It conferred upon the school district thus created the powers and privileges of a corporate entity. The legislature clothed the school district with

power to make contracts, to incur obligations, to create indebtedness for school purposes, and to provide a sinking fund for the payment of indebtedness and the liquidation of bonds, the payment of which was assumed when the school property of the city was taken over by it for school purposes  For the maintenance of the public schools and for the payment of debts created or assumed, the school district was given the power to levy and collect taxes just the same as a county or a city is given the power to levy and collect taxes for county or municipal purposes.  The Board of Education, acting for the school district under the power conferred by the legislature, took over the school property of the city and agreed to assume, and in fact did assume, the payment of $6,524,216.57 of the bonded indebtedness of the city, which sum represented what was considered an equitable share of the public burdens to be borne by the school district in consideration for the valuable assets and property transferred to it.  The school district, therefore, had transferred to it as a separate body corporate, all of the school property, formerly owned by the city, and as a consideration for the transfer, assumed the payment of the amount above stated.  Why is not this a valid contract binding upon both parties?  Neither the city nor the school district denies the validity of the contract nor the binding obligations thus imposed by law and covenant.  The school district is not attempting to evade its liability for the payment of the bonded indebtedness assumed by it, and the city is content with the situation.  As between these two separate bodies corporate the obligation of the school district is considered binding, and no one doubts either the willingness or the ability of the school district to meet its obligations at maturity.  There is not the slightest doubt but that the school district will pay out of the school revenues the $6,524,216.57, the payment of which it assumed when the school property was taken over.  It seems to me that every fair minded person must concede the cor-

rectness of these statements.   This, then, brings us to
the consideration of the practical question in the case.
Is the school district of Philadelphia a solvent debtor
within the meaning of the Act of 1874?   This act pro-
vides that the net amount of the indebtedness of a mu-
nicipality or other incorporated district "shall be ascer-
tained by deducting from the gross amount thereof all
moneys in the treasury, and all outstanding solvent
debts, and all revenues applicable within one year to the
payment of the same."   Is the school district of Phila-
delphia a solvent debtor, and is its obligation to pay
$6,524,216.57 a solvent debt?   If so, this amount should
be deducted from the gross indebtedness of the city in
ascertaining its net indebtedness under the Act of 1874.
Who says that the school district of Philadelphia is not
a solvent debtor, or that debts created or assumed by it
are not solvent debts?   No one in interest.   It would be
a distinct shock to the Board of Education, and to the
patrons of the public schools, to be told that the school
district was insolvent and could not pay its legal obliga-
tions.   Why cast a doubt upon the obligations of the
school district by a labored attempt to show that it is
not a solvent debtor and cannot pay what it is legally
bound to pay?   Of course the school district is solvent,
and of course it can and will pay what it agreed to pay,
and this as between the city and the school district
makes the latter a solvent debtor, and the indebtedness
assumed by it, a solvent debt, within the meaning of the
Act of 1874.   I entirely agree with the contention of
learned counsel on both sides of this case, that the gross
indebtedness of the city should include the item of
$6,524,216.57, because the bonds were issued by the city,
and the city is therefore primarily liable for their pay-
ment, but in ascertaining the net indebtedness of the city
I would deduct this item from the gross indebtedness
because the city has a solvent debtor upon which it relies,
and can rely, to pay this amount of indebtedness as the
bonds mature.

There is a further and practical reason why this view should prevail. No matter how our views differ in other respects, we all agree that the item of $6,524,216.57, must be charged against the school district in ascertaining its borrowing capacity. If the item be charged against the city in the present instance, and no deduction be made because of the obligation of the school district to pay it, and the same amount of indebtedness be charged against the school district in determining its borrowing capacity, both districts will be charged with the same indebtedness, and the borrowing capacity of each will be reduced by this amount, although there is but a single indebtedness covered by the item in question. In the absence of any constitutional or statutory requirement making such a construction necessary, no such rule should be adopted. The item involved represents a single indebtedness, which as regards the bondholders the city is primarily liable to pay, but as between the city and the school district, the latter is bound to pay, and will pay, and therefore the school district is a solvent debtor upon which the city can call to meet its obligations.

It is too late to even question the validity of the Act of 1874 on constitutional grounds. For forty years the profession throughout the State have accepted it as a valid binding act and municipal indebtedness to the extent of millions of dollars has been created upon the strength of its provisions. This court has also settled the question beyond the peradventure of doubt: Bruce v. Pittsburgh, 166 Pa. 152; Elliot v. Philadelphia, 229 Pa. 215. Nothing can be gained now by attempting to disturb what must be considered a settled question of law. It is true that the courts have not been called upon to precisely define what is meant by the words "solvent debts" within the meaning of the Act of 1874. To my mind a debt is an obligation to pay, and if the debtor is solvent and able to pay his obligation, he is a solvent debtor, and his obligation to pay is a solvent debt, within any reasonable meaning of the term. The school dis-

trict of Philadelphia is able to pay its obligations and is therefore a solvent debtor, and its obligation to pay $6,-524,216.57, is a solvent debt within the meaning of any fair interpretation of the Act of 1874. This indebtedness will be paid by creating a sinking fund for the purpose, in the same manner as the city creates a sinking fund to pay its indebtedness. Already the school district has paid into the sinking fund about $600,000 under its contract with the city, and will continue to meet its obligations in this respect until its indebtedness is fully paid. Under such circumstances it seems trifling with the meaning of words to say that the school district is not a solvent debtor and that its obligation to pay is not a solvent debt. If the obligation of the school district is a solvent debt, the express provisions of the Act of 1874 require it to be deducted in ascertaining the net indebtedness of the city.

It is suggested that the legislature might repeal the school code without making any provision for the payment of indebtedness created or assumed by the school district, and in such event, the City of Philadelphia would have no recourse against the school district. It could just as well be said that the legislature might repeal what is known as the Bullitt Act, and all other acts relating to the city, and by so doing, strike down the entire municipal government and take away from it its power to levy and collect taxes and to incur and pay municipal indebtedness. But such suggestions are not in keeping with the spirit of our people and such a method of repudiating indebtedness and destroying public credit is foreign to Pennsylvania. Of course the legislature would do no such thing without making ample provision for the payment of all honorable obligations. I would sustain the position taken by the learned city solicitor and allow a deduction of the amount assumed by the school district from the gross indebtedness of the city.

With the greatest respect for the views of my asso-

ciates who do not agree with me, I would sustain the authorized loan of $8,600,000.00 and dismiss the bill.

MR. JUSTICE STEWART joins in this dissent.