## Appeal of Borough of Summit Hill

*Walter Biddle Saul* of *Saul, Ewing, Remick & Saul,* for appellant.

*A. Lee Edwards,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for Department of Internal Affairs.

*John Y. Scott,* and *F. H. Bohlen* of *Saul, Ewing, Remick & Saul,* for a bondholder.

HARGEST, P. J., September 2, 1941.—This matter comes before us upon an appeal of the Borough of Summit Hill from the action of the Department of Internal Affairs in refusing to approve a bond issue.

The petition for appeal avers that the borough, by ordinance dated March 7, 1927, expressed the desire to increase its bonded indebtedness in the sum of $300,000, $210,000 thereof being for repaving, curbing, and recurbing the streets, and $90,000 for the construction of sewers. At a special election, more than three fifths of the electors voted to increase the indebtedness for that purpose. By ordinance approved June 8, 1927, the borough authorized the issuance of tax-free bonds in the sum of $300,000, at 4½ percent interest, dated June 1, 1927. The bonds matured at the rate of $10,000 on June 1st of each year thereafter. These bonds increased the indebtedness of the borough from $72,864 to $372,864, exceeding 7 percent, but not exceeding 10 percent, on $4,168,457, the amount of the last assessed valuation. $90,000 of said bonds have been paid off. By ordinance approved September 16, 1940, the borough authorized the issuance of $210,000 of bonds as of November 1, 1940, at the rate of 3 percent, to refund the outstanding issue. This ordinance recited the fact that the holders

of the bonds to the amount of $190,000 had agreed to surrender the same for refunding purpose and that the holders of the remaining $20,000 had been requested so to do. The borough officers filed their sworn financial statement in connection with the proposed refunding issue in the Court of Quarter Sessions of the Peace of Carbon County, and otherwise complied with the Act of April 20, 1874, P. L. 65, and its amendments and supplements, and on March 31, 1941, duly submitted to the Department of Internal Affairs, as provided by the Act of March 31, 1927, P. L. 91, as amended, a complete and accurate copy of the proceedings authorizing the said issue of refunding bonds. The Department of Internal Affairs disapproved said issue, whereupon this appeal was taken.

The Secretary of Internal Affairs filed an answer averring that the original issue of bonds was not authorized under article IX, sec. 15, of the Constitution of Pennsylvania, and that, notwithstanding all the legal steps taken for the refunding, he was without authority to approve the refunding since the original issue was illegal. Melville G. Curtis, a bondholder, filed an answer admitting all the facts in the petition and averring that the original issue was legal.

A stipulation was filed to amend the answer of Curtis by adding an allegation that the Public School Employees' Retirement Board had purchased $270,000 principal amount of said bonds, of which $80,000 has since been retired and paid off, which purchase was made with the approval of the Budget Secretary of the Commonwealth and of the office of the Attorney General of the Commonwealth, and that on July 3, 1930, James F. Woodward, then Secretary of Internal Affairs of the Commonwealth, approved an issue of $80,000 of bonds of the Borough of Coaldale, Schuylkill County, for the purpose of paving, grading, curbing, and draining streets of said borough, pursuant to the approval of more than three fifths of the electors,

which increased the indebtedness of said borough to a sum more than 7 percent, but not in excess of 10 percent, of the then valuation thereof.

The single question involved in this appeal is whether, under article IX, sec. 15, of the Constitution of Pennsylvania, the original issue of the bonds was valid.

The constitutional provision is as follows:

"No obligations which have been heretofore issued, or which may hereafter be issued, by any county or municipality, other than Philadelphia, to provide for the construction or acquisition of waterworks, subways, underground railways or street railways, or the appurtenances thereof, shall be considered as a debt of a municipality, within the meaning of section eight of article nine of the Constitution of Pennsylvania or of this amendment, if the net revenue derived from said property for a period of five years, either before or after the acquisition thereof, or, where the same is constructed by the county or municipality, after the completion thereof, shall have been sufficient to pay interest and sinking-fund charges during said period upon said obligations, or if the said obligations shall be secured by liens upon the respective properties, and shall impose no municipal liability. Where municipalities or counties shall issue obligations to provide for the construction of property, as herein provided, said municipalities or counties may also issue obligations to provide for the interest and sinking-fund charges accruing thereon until said properties shall have been completed and in operation for a period of one year; and said municipalities and counties shall not be required to levy a tax to pay said interest and sinking-fund charges, as required by section ten of article nine of the Constitution of Pennsylvania, until after said properties shall have been operated by said counties or municipalities during said period of one year. *Any of the said municipalities or*

*counties may incur indebtedness in excess of seven
per centum, and not exceeding ten per centum, of the
assessed valuation of the taxable property therein, if
said increase of indebtedness shall have been assented
to by three-fifths of the electors voting at a public elec-
tion, in such manner as shall be provided by law.*"
(Italics supplied.)

In approaching the construction of this, or any other,
constitutional provision, there are certain funda-
mental principles which must be kept in mind, the
chief of which, as applied to this case, is expressed in
the headnote to Long v. Cheltenham Township School
District, 269 Pa. 472, as follows:

"Ordinary words used in the Constitution must be
construed in their popular and general sense, as the
people who voted for it probably understood them."

The question is whether the words "said municipali-
ties" in the last sentence of the constitutional provision
above quoted refer to all municipalities which may in-
crease their indebtedness for any proper purpose, or
only to those municipalities increasing their indebted-
ness "for the construction or acquisition of water-
works, subways, underground railways or street rail-
ways".

In the case just referred to, the Supreme Court held
that the word "municipalities" must be given the same
meaning as it had in the preceding sentences of the
same section, and that "the entire section must be con-
strued together in order to ascertain its meaning".
The court concluded that a school district had no right
to construct or acquire "waterworks, subways, under-
ground railways or street railways", and, therefore,
could not be considered as a muncipality within the
meaning of this section.

In Hoffman v. Kline et al., 300 Pa. 485, 493, where
the word "construction", as used in this section of the
Constitution, was under consideration, the court said:

"Nevertheless, we deem it advisable also to give gen-
eral consideration to the whole amendment, which car-

ries through its entire provisions the definite intent and purpose of *authorizing a specific class of bond issue,* which, when issued, shall, under the Constitution, form an exception to its other provisions relative to the creation and limitation of municipal indebtedness, in that the bonds thus issued shall not be a debt of the municipality." (Italics supplied.)

The clear inference to be drawn from the two cases above referred to is that the word "municipalities" throughout section 15 of article IX of the Constitution, refers only to one class of municipalities, namely, that class which issues obligations for the "construction or acquisition of waterworks, subways, underground railways or street railways", and that the power to incur indebtedness above 7 percent of the assessed valuation, upon a three-fifths vote of the electors, is limited to that class.

The contention of appellant is diametrically opposed to this construction. It insists that the word "municipalities", as used in the last sentence, is not limited to those who issue obligations for the improvements referred to in the first sentence, but includes any municipalities which may issue obligations for any proper municipal improvement.

The last sentence uses the words "Any of the said municipalities". The legislature must not be presumed to use useless words. If, as contended by appellant, "municipalities" means "all municipalities", then the word "said" is a useless word.

If certain municipalities, such as counties, cities, and boroughs, had been designated, as they are in section 8, art. IX, then "said municipalities" would only have referred to such designated municipalities. We think the same construction must be applied, particularly in view of the determination of the Supreme Court in the two cases, that the whole section must be construed together, namely, that the section refers to a class of municipalities, and that the words "said mu-

nicipalities" in the last sentence refer only to those which have issued bonds for the improvements specifically designated in the section.

Appellant contends that the interpretation long acquiesced in by the people and the legislature should be given great weight: Moers v. The City of Reading, 21 Pa. 188, 201; Commonwealth ex rel. v. Mathues, 210 Pa. 372, 392; and that where an act of legislature has existed many years and has been relied upon by municipalities it will not be held unconstitutional, even though it might have been so held if its constitutionality had been promptly raised: McGuire v. Philadelphia (No. 1), 245 Pa. 287, 293.

These are sound principles of constitutional construction but hardly applicable. We have no judicial interpretation except in the two cases above referred to, which we think is contrary to the contention of appellant. The answer does suggest the investment of the Public School Employees' Retirement Fund with the approval of the Budget Secretary and the office of the Attorney General in this specific issue, and also avers that on August 1, 1930, there was one other issue of the Borough of Coaldale in a similar situation. We do not think that that is a situation such as referred to in McGuire v. Philadelphia (No. 1), supra, or in the cases therein cited, where the Act of 1874 was on the statute books more than a score of years and remained unchallenged.

In Commonwealth v. Gilligan, 195 Pa. 504, 511, it was said:

"The act has stood on the statute book, without challenge for nearly a quarter of a century, and millions of dollars of school funds have been collected and disbursed under its provisions. While these are not reasons for refusing to declare it void if in contravention of the constitution, yet they are strongly persuasive that the act is not so clearly unconstitutional as it should be shown to be to make it our duty now to set it aside. . . ."

Two instances of the legislative construction one way would not come within the language just quoted.

In view of what we regard as a clear construction of the Constitution, we are unable to find any persuasive reason to prevent us from construing section 15 as we think it must be construed.

For these reasons the appeal must be dismissed.

And now, September 2, 1941, the appeal of the Borought of Summit Hill from the action of the Department of Internal Affairs in refusing to approve proceedings authorizing the issuance of $210,000 principal amount of its 3% Refunding Bonds, Series "B", dated as of November 1, 1940, is hereby dismissed.