## Fisher *v.* Philadelphia.

Argued June 27, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Lewis H. VanDusen, Jr.,* for plaintiff.

*Helen S. Chait,* Deputy City Solicitor, with her *Jerome J. Shestack,* First Deputy City Solicitor, and *Abraham L. Freedman,* City Solicitor, for respondents.

ORDER PER CURIAM, June 28, 1955:

And now, To wit, June 28, 1955, it is ordered and decreed that the prayer for an injunction in these proceedings is denied; that the Ordinance of the City of Philadelphia of September 24, 1954, to authorize the creation of a loan in the sum of two million dollars as therein provided, is declared to be valid and not violative of any provision of the Constitution or laws of the Commonwealth; and that the complaint be, and the same is hereby dismissed. Opinion to be filed later. Costs to be paid by the City of Philadelphia.

––––––

OPINION BY MR. CHIEF JUSTICE HORACE STERN, September 26, 1955:

The inquiry here concerns the constitutionality and validity of a certain ordinance of the City of Philadelphia authorizing a public loan. We exercised our orig-

inal jurisdiction because of the public importance of the question involved and the consequent desirability of its being determined as promptly as possible. For the same reason we entered a decree immediately following the argument and stated that an opinion would be filed later.

The ordinance is that of September 24, 1954. It authorized the Mayor, City Controller and City Solicitor, or a majority of them, to borrow, on the faith and credit of the City of Philadelphia, a sum or sums which in the aggregate should not exceed $2,000,000, the monies raised by the loan to be used for highway purposes. It provided "That the authority to increase the City's indebtedness as herein contained shall not be effective unless the electors shall give their consent thereto at a public election to be held on Tuesday, November 2, 1954: And provided further, That notwithstanding the consent of the electors at said election, the authority to increase the City's indebtedness as herein contained shall not be valid and effective nor constitute an increase of the indebtedness of the City until January 3, 1955, and then only if, as shown by a certificate of the City Controller to be made as of January 3, 1955, the amount of the indebtedness of the City existing on that date, plus the loan hereby authorized, less the deductions from such indebtedness allowed by law, shall not exceed thirteen and one-half per centum of the average of the annual assessed valuations of the taxable realty in the City during the ten years immediately preceding the year 1955."

On November 2, 1954, after due notice as required by law, an election was held at which the following question was submitted: "Shall the City of Philadelphia borrow $2,000,000 for and towards roads, streets, bridges and buildings for highway purposes: the authorization for this loan not to be effective nor consti-

tute an increase of indebtedness until January 3, 1955, and then only if, as certified by the City Controller, the amount of then existing net indebtedness, plus the amount of this loan, shall not exceed the amount of net indebtedness then authorized by law?"

On November 19, 1954, the County Board of Elections filed with the Prothonotary of the Court of Common Pleas of Philadelphia a certificate certifying that the majority of the electors had voted "Yes" in answer to the above question.

It appears that on the date of the enactment of the ordinance, on the date of the election, and on the date of the filing of the certificate certifying to the result of the election, the net constitutional borrowing capacity of the City of Philadelphia was not sufficient to support the loan of $2,000,000, but on January 3, 1955, there did exist a sufficient borrowing margin to sustain it.

The present complaint was filed by a taxpayer of the City. It asserted that under Section 8 of Article IX of the Constitution of the Commonwealth the purported authorization to increase the city's indebtedness as set forth in the ordinance and consented to by the electors was void; it prayed that the ordinance be declared invalid and that the city officials be enjoined from issuing $2,000,000 of the city's bonds in reliance thereon.

Section 8 of Article IX of the Constitution, as amended in 1951, provides that "The debt of the city of Philadelphia may be increased in such amount that the total debt of said city shall not exceed thirteen and one-half (13½) per centum of the average of the annual assessed valuations of the taxable realty therein, during the ten years immediately preceding the year in which such increase is made, . . ."

Plaintiff attacks the constitutionality of the ordinance in question in reliance on (1) a statement in *Brooke v. Philadelphia,* 162 Pa. 123, 135, 29 A. 387, 392, that "the real debt of the city is the authorized debt, . . ."; (2) the decision in *McGuire v. Philadelphia (No. 1),* 245 Pa. 287, 91 A. 622, that the amount of the city's authorized debt constitutes its debt within the meaning of the constitutional provision, without any deduction for authorized loans for which bonds were not yet issued; and (3) the decision in *Duane v. Philadelphia,* 322 Pa. 33, 185 A. 401, that a loan which is legal when authorized becomes immediately integrated as part of the city's debt, and that the actual issuance of the bonds pursuant thereto is not rendered illegal by reason of the fact that at that time the assessed value of the taxable property has decreased to such an extent that the proposed bond issue, together with the other funded debt of the city, is in excess of the constitutional limit.

The city does not question the binding force of the principles thus enunciated. It undoubtedly is the established law that if the constitutional debt limit is not exceeded by the proposed increase at the time of its authorization* a loan made pursuant thereto does not become invalid even if, at the time it is contracted, the city's borrowing limit is thereby exceeded; on the other hand, it presumably follows that if the amount authorized would, at the time, result in the then existing limit being exceeded, a subsequent issue of bonds would not be valid even though at the time of their issuance the then existing limit, due to a rise in the as-

---

*The authorizing ordinance becomes effective to authorize the new debt when a majority of the electors voting thereon have given their consent thereto as certified by the court's certificate of the result of the election. (Act of June 25, 1919, P. L. 581, Art. XVIII, section 6.)

sessed valuations of the property following the authorization, would not be exceeded thereby. As was concisely stated by Mr. Justice DREW in his dissenting opinion in the *Duane* case (p. 51, A. p. 409) : "Under. the ruling of the majority [in that case] the validity of a loan is irrevocably determined as of the time of its authorization, and if a subsequent change in conditions cannot nullify a valid authorization, neither can such a change validate a loan rendered invalid because in excess of the debt limit at the time of authorization."

The present question, therefore, resolves itself to this: Since the amount of the city's debt limit must be determined as of the time of the authorization of the proposed increase, must such authorization go into effect simultaneously with the date of the enactment of the ordinance or may the ordinance provide that the authorization shall become effective only upon a subsequent date therein specified? Here the ordinance provided that the authority therein granted to increase the city's indebtedness should not be valid and effective until January 3, 1955, such a provision being analogous to the ordinary and familiar specifications by statutes of their effective dates. It is obvious that if the present ordinance had been actually enacted on January 3, 1955, there could be no possible doubt of its validity; here the same result is reached by an enactment of the ordinance before that date but with a provision that it should become effective only on January 3, 1955,—in other words, just as if it were enacted on that date and made effective immediately. This does not involve any departure from the decisions in the cases above referred to since the city's borrowing capacity is here determined, as there required, at the time of the authorization of the increase of the debt and not at the time when the bonds in pursuance there-

of will be issued, the only variation being that the time of the effective authorization is here expressly specified in the ordinance, at which time the city's debt limit was not exceeded by the increase. If, due to a fall in the assessed valuations of the taxable property of the city, the constitutional debt limit would be exceeded at the time of the issuance of the bonds, the bonds would nevertheless be valid; if, on the other hand, the debt limit would have been exceeded on January 3, 1955 by the proposed increase, bonds could not validly be issued thereafter even though, due to a rise in the assessed valuations of the city's taxable property, the constitutional debt limit would not be exceeded at the time of such issuance. As to the condition set forth in the ordinance that the amount of the city's indebtedness on January 3, 1955, plus the authorized loan, must not exceed the city's borrowing capacity on that date, this was merely an expression of what the law, in any event, would require, being a condition that would similarly apply even if an authorization were to be effective at the time of the enactment of the ordinance.

It should be pointed out that the principal reason given in the *Duane* case for the decision there rendered was that a contrary holding would have resulted in an impractical situation. The same consideration of expediency demands that the procedure here adopted by the city be sustained as wholly proper and legal. Under the Home Rule Charter both an operating budget and a capital budget for the ensuing fiscal year must be submitted by the Mayor to the Council not later than 90 days before the end of the current fiscal year, and the Council must adopt the annual operating budget ordinance and the capital budget at least 30 days before the end of the current fiscal year. It is, of course, important that there be known at the time of the enact-

614

ment of such a loan ordinance and the subsequent approving election what the borrowing capacity of the city will be during the ensuing year, since otherwise the budgetary planning would necessarily be largely conjectural, but such borrowing capacity, based on the assessed valuations of the taxable realty during the ten years immediately preceding the year in which the increase is made, is. in fact known, under existing legislation and practice, long prior to the beginning of the ensuing year. Therefore, in the situation which here existed, it was possible and highly desirable to obtain the prompt consent of the electors to an increase in the debt which could then be utilized immediately after the beginning of the ensuing year, whereas, if plaintiff's view were to prevail, it would be impossible to obtain such consent until the year in which the loan was to be made, and then only when a primary election was scheduled or a special election could be held.

Because of the considerations thus stated the court entered a decree on June 28, 1955, denying plaintiff's prayer for an injunction, declaring that the city's ordinance of September 24, 1954, was valid and not violative of any provision of the Constitution or laws of the Commonwealth, and ordering that the complaint be dismissed; costs to be paid by the City of Philadelphia.